# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACY MUCKELMAN AND ALLISON MUCKELMAN, | : : : | CIVIL NO. 4:13-CV-00663 |
| Plaintiffs, | : : | (Judge Brann) |
| v. | : : | |
| COMPANION LIFE INS. CO., | : : | (Magistrate Judge Schwab) |
| Defendant. | : | |

## **REPORT AND RECOMMENDATION**

In this civil action, the plaintiffs, Tracy and Allison Muckelman, seek to recover incurred medical expenses under a term health insurance policy that was rescinded by the defendant, Companion Life Insurance Co. ("Companion"). In their complaint, the plaintiffs raise three claims: Count I – Bad Faith; Count II – Breach of Contract; and Count III – a Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201.1-1, *et. seq*. Before me now is Companion's motion to dismiss Counts I and III pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I recommend that the motion be granted in part and denied in part.

## I. **Background.**

On March 13, 2013, the plaintiffs initiated this action by filing a complaint against Companion seeking to recover damages for Companion's denial of

insurance coverage for certain medical expenses and its rescission of a term health insurance policy between the parties. More specifically, by the terms of the insurance policy issued to the plaintiffs (Policy # CST0230000), Companion was to provide coverage in accordance with the provisions of the policy, which was in effect from February 10, 2012 through February 10, 2013. During the policy period, Tracy was diagnosed with multiple myeloma and his doctors recommended that he undergo two bone marrow transplants. Before his diagnosis, Tracy had no knowledge of his condition.

After Tracy's doctors informed him of the need for two bone marrow transplants, he promptly sought approval for the procedures from Companion, in accordance with the insurance policy's terms. For a period of 10 months, Tracy waited for Companion's approval. While Tracy was awaiting approval, he received chemotherapy treatments, and he was assured by Companion that the bills relative to his treatment would be paid. Consequently, Tracy incurred medical expenses exceeding $162, 550.45; expenses that are still due and owing. Through correspondence dated February 8, 2013, Companion denied coverage for his medical expenses, rescinded the insurance policy, and sent Tracy a check for $3,715.15 representing the payment of all the paid premiums. At no previous time was Tracy aware that Companion was considering rescission. As well, Companion never approved the two bone marrow transplants, and Tracy claims that he cannot

obtain other affordable insurance because he now has a "pre-existing condition."

Companion's decision to rescind the insurance policy was based on Tracy's answer to question three on the application for insurance coverage.[1] Question three apparently had to do with previous treatments and diagnosis. As such, based upon the plaintiffs' information and belief, Companion's decision to rescind was based on a neurative stress test that Tracy received in 2007, five years before applying for the insurance policy, and which was allegedly not disclosed on the insurance application. Plaintiffs claim, however, that Tracy's answer was not fraudulent, intentional, or material; similarly Companion has not contended that Tracy's answer to question three was fraudulent, intentional, or material. Moreover, the plaintiffs claim that Companion's rescission was retroactive given part three of the policy in regard to termination of insurance, which states in pertinent part:

> Coverage of a Covered Person under the Policy shall automatically terminate on the earliest of the following dates: …8. The date We specify that the Covered Person's insurance is terminated because of: … c. Material misrepresentation, fraud, or omission of information on any application form, or in requesting the receipt of benefits under the Policy.

---

[1] In Companion's original notice to Tracy that it was denying coverage, Companion erroneously stated that it was denying coverage based upon Tracy's answer to question five. *Doc.* 1 at ¶ 19; *see Doc.* 9-1 at 11. In a follow up letter, mailed after this complaint was filed, Companion informed Tracy of its error in that it was denying coverage based upon his response to question three. *Doc.* 9-1 at 11.

*Doc.* 1 at ¶ 28-29.

In addition to not paying for Tracy's medical expenses, Companion has not paid for any other person covered by the policy, including Allison and the plaintiffs' children. Based on these allegations, the plaintiffs raise three claims: Count I for bad faith under 42 Pa.C.S. § 8371; Count II for breach of contract; and Count III for violation of the UTPCPL.[2] By way of remedy, plaintiffs demand judgment against Companion in an amount in excess of $100,000 plus additional compensation or consequential damages or both, with interest, court costs, attorney's fees, and delay damages.

On May 13, 2013, Companion filed this motion to dismiss Counts I & III, along with a corresponding brief in support and exhibits. *Docs.* 8 & 9. On May 28, 2013, plaintiffs filed a timely brief in opposition. *Doc.* 10. Subsequently, on June 6, 2011, Companion filed a timely reply brief. The motion, having been fully briefed by the parties, is ripe for disposition on the merits.

## II. Jurisdiction and Legal Standard.

Given the alleged citizenship of the parties, *Doc.* 1 at ¶¶ 1-2, coupled with the alleged amount in controversy, I find that this Court maintains subject matter jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. § 1332. Moreover,

---

[2] Plaintiffs cite to the incorrect statute, *Doc.* 1 at ¶ 49, but their brief in opposition to Companion's motion to dismiss affirms that plaintiffs intend to raise a claim under the UTPCPL. *See generally*, *Doc.* 10 at 12-15.

4

Companion has not challenged the Court's personal jurisdiction, and since it is a defense than can be waived, *see* Fed.R.Civ.P. 12(h)(1), I do not address that issue here.

With respect to the applicable legal standard, Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Under Rule 12(b)(6), a dismissal motion may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations and citation omitted). After *Twombly* and *Ascroft v. Iqbal*, 556 U.S. 662 (2009), "conclusory or bare-bones allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F.3d at 210 (internal quotations and citation omitted). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555.

## III. <u>Discussion</u>.[3]

As stated, *supra*, the plaintiffs raise three claims in separate counts. The claims raised in Counts I & III, respectively, are the subject of Companion's dismissal motion, and they will be addressed *seriatim*, applying the Rule 12(b)(6) legal standard.

### A. Count I: Bad Faith.

Plaintiffs assert their claim for bad faith pursuant to 42 Pa.C.S. § 8371, which provides a statutory remedy for an insurer's bad faith conduct. The statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

---

[3] The parties agree that Pennsylvania law governs this action, and it is well-established that "federal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern[s]…." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3d Cir. 1990). Where there is no guidance from the Commonwealth's highest court, my task is to predict how that high court would resolve the matter. *See id.* "In making such predictions [I] recognize that the state's highest authority is the best authority on its own law and that if there be no decision by that Court then [I] must apply what [I] find to be the state law after giving proper regard to the relevant rulings of other courts of the state." *Id.* (quotations and citations omitted). Thus, "[my] role is not to form or create state law but to decide the case as [I] believe it would have been decided by the state's highest court had the [issue] arisen in the state court system." *Id.* (citing *Becker v. Interstate Properties*, 569 F.2d 1203, 1205 n. 5 (3d Cir. 1977)).

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.

The statute does not define what constitutes bad faith, but Pennsylvania courts, the Third Circuit, and decisions from district courts within the Third Circuit provide ample guidance. Accordingly, "[t]he term 'bad faith' under Section 8371 concerns 'the duty of good faith and fair dealing in the parties' contract and the manner in which an insurer discharged ... its obligation to pay for a loss in the first party claim context.'" *Berg v. Nationwide Mut. Ins. Co., Inc.*, 44 A.3d 1164 (Pa. Super. Ct. 2012) (quoting *Toy v. Metrolpolitan Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 199 (Pa. 2007)) (alteration in original). Recently, the Third Circuit set out the relevant legal framework:

> "Bad faith" under Pennsylvania's bad faith statute—42 Pa. Const. Stat. § 8371, which provides a remedy in an action under an insurance policy—is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (Pa.Super.Ct.1994)). A valid cause of action for bad faith requires "clear and convincing evidence ... that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id.* Under the "clear and convincing" standard, "the plaintiff [must] show 'that the

> evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" *Id.* (quoting *Bostick v. ITT Hartford Grp., Inc.*, 56 F.Supp.2d 580, 587 (E.D. Pa. 1999)). Though we have found that bad faith may be found in circumstances other than an insurer's refusal to pay, "[a] reasonable basis is all that is required to defeat a claim of bad faith." *Id. See also Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999).

*Treadways LLC v. Travelers Indem. Co.*, No. 11–2596, 2012 WL 764917, at *2 (3d Cir. Mar.12, 2012) (not precedential) (alteration in original).

The Pennsylvania Superior Court has further observed that "[b]ad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006) (citing *Williams v. Nationwide Ins. Co.*, 750 A.2d 881, 887 (2000)). Thus, since the statute is not limited to an insurer's bad faith in denying a claim, a plaintiff may also successfully assert an action for an insurer's bad faith in investigating a claim, *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999), such as a failure to conduct a "sufficiently thorough" investigation to yield a reasonable foundation for its action based upon available information, *Giangreco v. U.S. Life Ins. Co.*, 168 F.Supp.2d 417, 423 (E.D. Pa. 2001), and failure to communicate with the claimant. *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994) (citing 3 Appleman, Ins. Law & Practice § 1612 (1967 & Supp. 1991)); *see also Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. Ct.

2009). In addition, "[d]elay is a relevant factor in determining whether bad faith has occurred," *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D.Pa.1999) (citing *Klinger v. State Farm Mut. Auto Ins. Co.*, 115 F.3d 230, 234 (3d Cir. 1997)); s*ee Gallatin Fuels, Inc. v. Westchester Fire Insurance Co.*, 244 F. App'x 424 (3d Cir. 2007) (nonprecedential) (insurer found liable for bad faith absent duty of coverage on the grounds that it "dragged its feet in the investigation of the claim, hid information from the insured, and continued to shift its basis for denying the claims.").

Still, however, negligence or bad judgment does not constitute bad faith. *Brown v. Progressive Ins. Co.,* 860 A.2d 493, 501 (Pa. Super. Ct. 2004) (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa. Super. Ct. 1999)). Rather, "[t]o support a finding of bad faith, the insurer's conduct must be such as to 'import a dishonest purpose.' In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will." *Id.* (quoting *Adamski*, 738 A.2d at 1036).

In their complaint, Plaintiffs state that their bad faith claim is based on the factual background as well as the following: (1) Companion's delay of payment for Tracy's claim, resulting in economic harm; (2) Companion's denial of Tracy's use and benefit of monies to which he was entitled; (3) Companion's misplaced interest; (4) Companion's act of engaging in post-claim underwriting; and (5)

9

Companion's decision to rescind the policy without a reasonable basis and in violation of the Patient Protection and Affordable Care Act.[4]  *Doc.* 1 at ¶¶ 35, 37(a)-(h).

Before reaching the merits, there are threshold procedural questions that must be addressed.  In support of its motion to dismiss, Companion contends that *Doc.* 9-1 [Exh. A and B], can be considered because they strike at the heart of the plaintiffs' bad faith claim; Exhibit A is an electronic copy of an insurance application allegedly filled out by the plaintiffs, and Exhibit B contains copies of

---

[4]     Based on the allegations in the complaint, it does not appear that the plaintiffs intend to bring a claim under the Patient Protection and Affordable Care Act.  Nevertheless, the Act was enacted in March 2010, and it is designed to regulate the national health insurance market by directly regulating group health plans and insurance issuers.  Under the Act:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not rescind such plan or coverage with respect to an enrollee once the enrollee is covered under such plan or coverage involved, except that this section shall not apply to a covered individual who has performed an act or practice that constitutes fraud or makes an intentional misrepresentation of material fact as prohibited by the terms of the plan or coverage. Such plan or coverage may not be cancelled except with prior notice to the enrollee, and only as permitted under section 2702(c) or 2742(b).

42 U.S.C. § 300gg-12.  The "prior notice" must be in writing and provided at least 30 days in advance to each participant who would be affected before coverage can be rescinded.  *See* 26 C.F.R. § 54.9815-2712T (expired on June 21, 2013 pursuant to the sunset provision set forth in subsection (d)).  Here, the plaintiffs have alleged that Companion did not send the requisite notice, an allegation that will be taken into consideration in analyzing the plaintiffs' bad faith claim.  *See Doc.* 1 at ¶¶ 16, 18.

Tracy's medical records. As such, I must determine whether this motion should be converted to a summary judgment motion pursuant to Fed.R.Civ.P. 56 and, if not, whether I can consider the exhibits as part of Companion's motion under Fed.R.Civ.P. 12(b)(6).

With respect to the first issue, it is unclear whether the parties have engaged in any meaningful discovery. Moreover, although Companion has appended exhibits to their brief, it has not attached any affidavits attesting to their authenticity. Such proof is necessary in order to present this evidence on a motion for summary judgment. *See In re Mezvinsky*, 265 B.R. 681, 693 n. 19 (Bankr. E.D. Pa. 2001)(citing *Berk v. Ascott Inv. Corp.*, 759 F.Supp. 245, 249 (E.D. Pa. 1991)("Documents attached to a summary judgment brief, absent affidavit support attesting to their validity, are not evidence.")); *see also Nolla Morell v. Riefkohl*, 651 F.Supp. 134, 140 (D. Puerto Rico 1986) (excluding on summary judgment documents filed by defendants unaccompanied by affidavits attesting to their validity). If I am ever to consider a motion for summary judgment in this matter, I would prefer to do so with properly authenticated documents and a full record compiled after an appropriate discovery period. I shall, therefore, treat Companion's current motion as one seeking dismissal under Rule 12(b)(6).

Next, in addition to the Rule 12(b)(6) legal standard, *supra*, a court ruling on a motion to dismiss will not consider "matters extraneous to the pleadings." *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However, an exception to the general rule is that a document *integral to or explicitly relied upon* in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (quotation marks omitted) (alteration in original). The rationale behind this exception is that a plaintiff has notice of such a document and should not be able to predicate a claim on statements taken out of context. Accordingly, when ruling on a 12(b)(6) motion, a court may "consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record [along with] an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993).

Here, the exhibits that Companion seeks to be considered are not explicitly relied upon by the plaintiffs. In fact, not once do the plaintiffs cite to any of Companion's exhibits in their complaint, rather the only reference to those documents is made in passing, *see Doc.* 1 at ¶¶ 19-20. As well, there is no question that Companion's exhibits were neither attached to the complaint nor matters of public record. Further, the plaintiffs dispute the authenticity of the exhibits and raise specific objections to their consideration; objections which I find have merit. *Doc.* 10 at 5-6. Thus, I decline to consider Companion's exhibits in

conjunction with its dismissal motion.

Having set aside Companion's exhibits, I find that plaintiffs' allegations are sufficient to show that they have a "plausible claim for relief" as is required to defeat Companion's motion to dismiss. *Iqbal*, 556 U.S. at 678. Specifically, the complaint, viewed in the light most favorable to the plaintiffs, contains allegations of potentially unacceptable delays in denying the plaintiffs' rights under the policy and paying benefits under it. For a period of 10 months, Companion was allegedly aware of the insurance claims submitted by the plaintiffs. Rather than providing a prompt response, Companion allegedly misled the plaintiffs into believing that their claims would be covered under the insurance policy. Moreover, the length of the delay is suspect given Companion's ultimate reason for denying coverage for Tracy's cancer treatments and rescinding the policy; a reason apparently unconnected to Tracy's condition for which he sought insurance coverage, and a reason that should have and could have been easily established once the insurance application was first submitted.

Additionally, prior to rescinding the policy, Companion did not notify the plaintiffs that their insurance claims would be denied. As well, Companion never informed the plaintiffs that Tracy's response to question three was material, contrary to what the defendant-insurance company did in *Neiman v. Am. Intern. Group, Inc.*, Civil No. 1:CV-08-1535, 2009 WL 3764027, at *5 (M.D. Pa. Nov. 9,

13

2009)(denying defendants' motion for summary judgment). In a similar vein, it is not clear that Tracy's answer to question three was in fact material, fraudulent, or intentional. As the plaintiffs here explain, the *Neiman*-plaintiff erroneously answered questions relating to his medical care on a life insurance application even though he had visited a doctor on *numerous* occasions *immediately prior* to completing the insurance application. As such, the *Neiman*-Court determined that the plaintiff's answer on the application was material. In contrast, here, there is currently evidence of only a single doctor visit by Tracy that occurred five years before applying for insurance coverage. To find at this stage that Tracy's misrepresentation was material, or that Companion engaged in a "sufficiently thorough" investigation, would be putting the cart before the horse and have the potential effect of chilling litigation in this area of the law. Health insurance companies would effectively be permitted to simply comb through insurance applications to later find reasons for denying coverage knowing full-well that the insured, despite a well-pleaded complaint, would not be permitted to look behind the curtain to see the wizard. I conclude, therefore, that this is a case in which discovery is needed regarding Companion's handling of the plaintiffs' insurance claim. Accordingly, Companion's motion to dismiss should be denied on the plaintiffs' bad faith claim.

## B. Count III: Violation of the UTPCPL.

Plaintiffs assert that Companion engaged in unfair and deceptive business practices in violation of the UTPCPL. Under the UTPCPL, a private cause of action is explicitly allowed (73 P.S. § 201–9.2(a)); however, it is unnecessary here to evaluate the sufficiency of the plaintiffs' claim because it is nevertheless barred under the economic loss doctrine.

As Judge Rambo thoroughly explained:

> The economic loss doctrine provides that "no cause of action can be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property." 2–J Corp. v. Tice, 126 F.3d 539, 541 (3d Cir. 1997) (citing *Aikens v. Baltimore & Ohio R.R. Co.*, 348 Pa.Super. 17, 501 A.2d 277, 279 (1985)). The doctrine developed in the products liability context to prevent tort recovery where the only injury was to the product itself. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (adopting the doctrine in an admiralty products liability case). Within the Third Circuit, it has since been applied in the context of … the UTPCPL, *see, e.g., Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002).

> In *Werwinski*, the Third Circuit held that Pennsylvania law made no exception to the economic loss doctrine for intentional tort claims and UTPCPL claims. *Id.* at 674. Although Pennsylvania's Supreme Court had yet to address the issue, the Third Circuit predicted that the Pennsylvania Supreme Court would likely apply the doctrine to claims under the UTPCPL. *Id.* at 680. In reaching this conclusion, the Third Circuit relied on two decisions from other states, *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, Inc., 209 Mich.App. 365, 532 N.W.2d 541, 545 (1995) and *Rich Prod. Corp. v. Kemutec, Inc.*, 66 F.Supp.2d 937, 977–80 (E.D.Wis. 1999), both of which held that a fraud-in-

15

> the-inducement claim is actionable, despite the economic loss doctrine, only if the fraud is extraneous to the alleged breach of contract. The *Werwinski* court explained that where the allegedly fraudulent misrepresentations concerned the subject of a contract, the tort claims are clearly intertwined with, rather than extraneous to, the contract claims. 286 F.3d at 678. Furthermore, "the alleged fraudulent concealment did not cause harms to the plaintiffs distinct from those cause by the breach of contract." *Id.* (citations omitted). Thus, the court held that the economic loss doctrine barred the claim. *Id.*

*Sarsfield v. Citimortgage, Inc.*, 707 F.Supp.2d 546, 556-57 (M.D. Pa. 2010).[5]

In the case *sub judice*, the plaintiffs' UTPCPL claim is barred by the economic loss doctrine. Unlike in *Smith v. John Hancock Insurance Company*, No. 06-3876, 2008 WL 4072585 (E.D. Pa. Sept. 2, 2008), the plaintiffs have not alleged that they were induced to enter a contract through deceptive conduct or that Companion's acts were related to anything other than performance of the insurance policy. Quite the contrary, the plaintiffs' allegations are critically related to the alleged breach of contract under the insurance policy in that the plaintiffs' UTPCPL claim is primarily concerned with Companion's claim processing methods. *See Doc.* 1 at ¶¶ 50-51. Noticeably lacking from the complaint is an allegation that the plaintiffs suffered a separate physical injury aside from the purported economic loss. Moreover, despite being denied insurance coverage,

---

[5] In *Sarsfield*, Judge Rambo also persuasively discussed how the Third Circuit's interpretation of Pennsylvania law in *Werwinski* could be incorrect. 707 F.Supp.2d at 556-59. Nevertheless, despite her thorough and well-thought out analysis, this Court is bound by the Third Circuit's opinion. *Id.* at 558.

16

Tracy avers that he has received certain medical treatments for his illness. As such, the only reasonable inference that can be made is that any loss incurred by the plaintiffs was purely economical.

Plaintiffs' UTPCPL claim should, therefore, be dismissed. The Court should also not grant leave to amend, because amendment would be futile. This claim, as explained, is inextricably tied in with the insurance policy between the parties, a factor that the Third Circuit considered in *Werwinski*, and no amount of artful pleading will permit them to be separated.

## IV. <u>Recommendation</u>.

Based on the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Companion's motion to dismiss (*Doc.* 8) be **GRANTED IN PART** and **DENIED IN PART** consistent with this Report and Recommendation:

   (a) Companion's motion should be **DENIED** with respect to the plaintiffs' bad faith claim; and

   (b) Companion's motion should be **GRANTED** with respect to the plaintiffs' UPTCPL claim.

(2) The case should be **REMANDED** to the undersigned for further pre-trial proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described

in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **15th** day of **January, 2014**.

                                    ***S/ Susan E. Schwab***
                                    Susan E. Schwab
                                    United States Magistrate Judge